**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RON AUBREY, an individual residing in Oklahoma, ) ) ) | |
| Plaintiff, ) ) | |
| -vs- ) ) | Case No. CIV-08-728-F |
| KIRK FANNING, an individual resident of Texas; STEVE SEVER, an individual resident of Texas; AMY SEVER, an individual resident of Texas; and CYBERWIZE.COM, INC., a Florida corporation, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## ORDER

Before the court is the motion of defendants Steve Sever and Amy Sever to dismiss for lack of personal jurisdiction, filed September 3, 2008 (doc. no. 11), and Defendant Kirk Fanning's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Forum Non Conveniens, filed September 5, 2008 (doc. no. 13). Plaintiff, Ron Aubrey, has responded to the motions and defendants have thereto replied. Upon due consideration of the parties' submissions, the court makes its determination.

Background

In the First Amended Complaint, plaintiff, Ron Aubrey ("Aubrey"), alleges the following facts, which for purposes of defendants' motions the court accepts as true. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008). Aubrey had a contract with defendant, Cyberwize.com, Inc.

("Cyberwize.com"), a Florida corporation with its principal place of business in Sarasota, Florida, to sell products as an individual marketer. Cyberwize.com is a multi-level, home based marketing business. Aubrey entered into an oral agreement with defendant, Kirk Fanning ("Fanning"), a Texas citizen, to purchase a lucrative ownership position in the matrix of Cyberwize.com. Aubrey paid Fanning $55,000.00 with the understanding that the condition precedent to finalizing the sale was Fanning's delivery of the specific matrix position to Aubrey. Fanning did not deliver the ownership of the position. Cyberwize.com thereafter terminated Aubrey's position with the company. Subsequently, Cyberwize.com made an agreement with Aubrey to reinstate him into the position he had bargained for with Fanning, if he obtained seven signatures from the upline and downline of the bargained-for position. Plaintiff obtained the requisite signatures from the downline. Plaintiff attempted to obtain names and addresses of individuals in the upline of the bargained-for position but Cyberwize.com refused to provide him with the information about upline sponsors. Cyberwize.com and defendants, Steve and Amy Sever ("the Severs"), Texas citizens, called members of the upline and downline of the bargained-for position and told them that Aubrey had committed fraud against Cyberwize.com. Cyberwize.com and the Severs asked the individuals not to sign Aubrey's petition to reinstate him into the bargained-for position. To date, Aubrey has not been reinstated to the bargained-for position.

In the First Amended Complaint, plaintiff seeks relief from Fanning for breach of an oral contract and from the Severs for intentionally interfering with his business relations and defaming him. Defendants, in their motions, contend that dismissal of plaintiff's action against them is required pursuant to Rule 12(b)(2), Fed. R. Civ. P., because the court may not properly exercise personal jurisdiction over them. Fanning also seeks to dismiss on the basis of forum non conveniens.

Discussion

The plaintiff bears the burden of establishing personal jurisdiction. Dudnikov, 514 F.3d at 1070. However, where, as in this case, a motion is decided at the preliminary stage based upon the complaint and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id*.; Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). In determining whether plaintiff has made a prima facie showing, the court resolves all factual disputes in favor of plaintiff. *Id*.

In a diversity case, such as this, a plaintiff must satisfy the requirements of the forum's long arm statute as well as the federal Constitution to establish personal jurisdiction. Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1131 (10th Cir. 1991). Oklahoma's long arm statute is coextensive with the constitutional limitations imposed by the Due Process Clause. *Id*. Thus, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant. *Id*. The court must therefore inquire as to whether the exercise of personal jurisdiction over Fanning and the Severs comports with due process.

The personal jurisdiction analysis involves a two-step inquiry. AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008). First, the court inquires as to whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there." *Id*. (quotations omitted). If the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends the traditional notions of fair play and substantial justice. *Id*.

Minimum Contacts

The "minimum contacts" test may be met in either two ways. <u>Melea, Ltd. v. Jawer SA</u>, 511 F.3d 1060, 1066 (10th Cir. 2007). If a nonresident defendant has "continuous and systematic general business contacts" with the forum state, he may be subjected to the general jurisdiction of the forum state's court. *Id.* In the absence of "continuous and systematic" contacts, a forum state court may exercise specific jurisdiction over the nonresident defendant if the defendant "purposefully directed" his activities at the state's resident and the cause of action arises out of those activities. *Id.* In the case at bar, Aubrey does not argue, and the record does not indicate, that defendants' contacts with Oklahoma are "continuous and systematic" so as to give rise to general jurisdiction over defendants. The court therefore must determine whether it may exercise specific jurisdiction over Fanning and the Severs.

I.   <u>Fanning</u>

As previously stated, Aubrey seeks relief against Fanning based upon breach of an oral contract. It is well-established that a contract between an out-of-state party and a forum state resident cannot, standing alone, establish sufficient minimum contacts with the forum state. <u>Benton</u>, 375 F.3d at 1077. "However, with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (quotations omitted); <u>TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd.</u>, 488 F.3d 1282, 1287-1288 (10th Cir. 2007). Relevant factors for assessing minimum contacts, in a contract case, include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." <u>Benton</u>, 375 F.3d at 1077.

In support of the exercise of specific jurisdiction over Fanning, Aubrey has submitted the affidavit of Matthew C. Goodin, an attorney. *See*, Affidavit of Matthew C. Goodin, plaintiff's response. In the affidavit, Mr. Goodin states that during the time period of May to September of 2006, Mr. Goodin had various meetings with Aubrey in his office in Oklahoma City. *Id*., ¶ 2. During one such meeting, Aubrey asked Mr. Goodin to prepare a purchase agreement, "wherein Fanning promised to procure a position in the Cyberwize matrix from Ms. Jamie Lane (his relative) for a relative of plaintiff." *Id*., ¶ 3. According to Mr. Goodin, Aubrey, while in Mr. Goodin's office, negotiated the terms of the agreement over the telephone with Fanning. Mr. Goodin advised Fanning that he represented Aubrey in preparing the agreement and confirmed the terms of the agreement that was to be prepared. *Id*., ¶ 4. Fanning explained to Mr. Goodin that "there were particular disclosure requirements that Cyberwize.com would require for their approval of the purchase." *Id.*, ¶ 5. Fanning then transmitted to Mr. Goodin's e-mail address a chain of e-mails between himself and/or Ms. Lane and Bradley Lankford, to attempt to clarify the Cyberwize.com disclosure and notice requirements. *Id.* According to Mr. Goodin, Fanning "clearly proposed that he would procure a position in the Cyberwize matrix, for a sum of money" and Aubrey assented to Fanning's proposal. *Id*. ¶ 6.

The court concludes that this affidavit does not establish sufficient contacts between Fanning and this forum. The affidavit only establishes that Aubrey negotiated with Fanning and Fanning proposed to procure the Cyberwize.com matrix position over the telephone while Aubrey was present in Mr. Goodin's office. As stated, a contract with a non-resident defendant, standing alone, is not sufficient to establish the requisite minimum contacts. <u>Benton</u>, 375 F.3d at 1077. The affidavit is silent as to who initiated the telephone call between Aubrey, Mr. Goodin and Fanning. The affidavit does not state, and there are no allegations in the First Amended

Complaint, that Fanning solicited Aubrey in Oklahoma to purchase the Cyberwize.com position at issue. According to Fanning's affidavit submitted with his motion, Aubrey approached him in March of 2006 about purchasing a position in the Cyberwize.com matrix. *See*, Affidavit of Kirk Fanning, defendant's motion, ¶ 3. In addition, Aubrey has not provided any allegations or evidence relating to how the agreement was to be performed.

Aubrey alleges in the First Amended Complaint that he paid Fanning $55,000 with the understanding that the condition precedent to finalizing the sale was Fanning's delivery of the position. There is no allegation, however, as to where or how the payment was actually made to Fanning. According to Fanning's affidavit, Aubrey paid Fanning $55,000 in Lewisville, Texas. *Id*, ¶ 4. There are also no allegations as to where or how the delivery from Fanning was to be made. According to Fanning's affidavit, he and Aubrey executed transfer documents for the position in Lewisville, Texas. *Id*. There are no allegations, and no evidence in the record, that activity amounting to a breach of the alleged oral agreement occurred in Oklahoma. Aubrey has failed to allege or offer facts to show that Fanning purposefully directed activities to Oklahoma other than sending e-mail to Mr. Goodin's office attempting to clarify the notice and disclosure requirements for Cyberwize.com's approval of the purchase.

It is well-established, however, that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts. Soma Medical Intern. v. Standard Chartered Bank, 196 F.3d 1292, 1299 (10th Cir. 1999). Aubrey has not alleged and there is no evidence before the court that the notice and disclosure requirements were condition precedents to the agreement or in any way a part of the agreement which Fanning allegedly breached. While Aubrey, at this stage of the proceedings, need only make a prima facie case of personal jurisdiction, the court

6

concludes that the allegations in the First Amended Complaint, taken together with Mr. Goodin's affidavit, do not suffice to make the required prima facie showing that Fanning's conduct and connection with the forum state was such that he should have reasonably anticipated being haled into court in Oklahoma for an alleged breach of an oral agreement.

II.   The Severs

In the First Amended Complaint, Aubrey alleges claims against the Severs for intentional inference with business relations and defamation.  In the context of tort claims, the purposeful direction requirement may be met when a defendant engaged in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." Dudnikov, 514 F.3d at 1072 (interpreting Calder v. Jones, 465 U.S. 783 (1984)).  Aubrey's complaint alleges that the Severs told individuals in the upline and downline of the bargained-for position that Aubrey had committed fraud against Cyberwize.com and asked the individuals not to sign the petition to reinstate Aubrey to the bargained-for position.  These allegations, accepted as true at this stage of the proceedings, are sufficient to show intentional action.  In addition, Aubrey, an Oklahoma citizen, alleges that he has lost past and future income and suffered damages as a result of the Severs' action.  Aubrey's allegations, however, fail to show that the Severs engaged in intentional action "expressly aimed at Oklahoma" and that the Severs had knowledge that the brunt of the injury would be felt in Oklahoma.  As to the latter, there are no allegations that the Severs knew Aubrey resided or was domiciled in Oklahoma.  Aubrey has not set forth any allegations or presented any evidence that establishes that the Severs would have known that the brunt of injury from their alleged wrongful actions would be felt in Oklahoma.  As to the former, Aubrey has not alleged or submitted any evidence to indicate who the upline and downline

7

individuals were and where they were located. In addition, he has not alleged or submitted any evidence where these individuals were told by the Severs that Aubrey had committed fraud. Although Aubrey alleges that the Severs called the upline and downline individuals, there are no allegations that the Severs made any telephone calls into Oklahoma. The position at issue which the Severs purportedly interfered with was held by a Texas citizen and the position was in a Florida company. Again, Aubrey has not alleged that the Severs knew that Aubrey was from Oklahoma.

"[T]he mere allegation that an out-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1079 (10th Cir. 1995). Here, the only allegations before the court are that the Severs intentionally interfered with Aubrey's business relations and defamed him. These allegations, by themselves, are not sufficient to establish the requisite minimum contacts between the Severs and Oklahoma.

Conclusion

In light of the above analysis, the court need not address whether the exercise of personal jurisdiction over defendants would offend the traditional notions of fair play and substantial justice. The court also need not discuss Fanning's motion to dismiss on the basis of forum non conveniens. Based upon the foregoing, Defendants Steve Sever and Amy Sever's Motion to Dismiss for Lack of Personal Jurisdiction, filed September 3, 2008 (doc. no. 11) is **GRANTED**, and Defendant Kirk Fanning's Motion to Dismiss for Lack of Personal Jurisdiction filed September 5, 2008 (doc. no. 13) is **GRANTED**. Defendant Kirk Fanning's Motion to Dismiss for Forum Non Conveniens, filed September 5, 2008 (doc. no. 13) is **DENIED** as **MOOT**. Plaintiff's

actions against defendants, Steve Sever, Amy Sever and Kirk Fanning, are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(2), Fed. R. Civ. P.

DATED October 6, 2008.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-0728p005(pub).wpd